MAY 1 2024 PM1:04
FILED-USDC-CT-HARTFORD

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GRAND JURY H-24-1

UNITED STATES OF AMERICA

v.

RICARDO SANTIAGO

CRIMINAL NO. 3:24CR 97 (VDO)(SDV)

VIOLATIONS:

18 U.S.C. § 1343
(Wire Fraud)

INDICTMENT

The Grand Jury charges:

COUNTS ONE THROUGH THREE
(Wire Fraud)

Introduction

At all times relevant to this Indictment, unless otherwise specified:

1.      The defendant RICARDO SANTIAGO ("SANTIAGO") resided in Hartford, Connecticut.

2.      Achieve Financial Credit Union was a National Credit Union Administration insured credit union headquartered in Berlin, Connecticut and has branch locations in New Britain, Connecticut and Meriden, Connecticut. Since at least November 1, 2016, SANTIAGO has maintained an account at Achieve Financial Credit Union with an account number ending -7029.

The Retirement Survivors Disability Insurance Program

3.      The Social Security Administration ("SSA"), an agency of the United States, administers certain government benefit programs, including the Retirement Survivors Disability Insurance ("RSDI") program.

4.      RSDI is a federally funded program for qualified individuals with a disability that prevents them from maintaining their prior employment or any employment in the national economy.

5.      SSA regulations require RSDI recipients to report accurately their employment status, disability status, and income so that the SSA can determine if they are disabled within the meaning of SSA regulations and unable to engage in any substantial gainful employment.

6.      The SSA performs a periodic review of eligibility of RSDI recipients for continued RSDI benefits, referred to as a continuing disability review ("CDR"). As part of the CDR, recipients of RSDI benefits are required to submit a Disability Update Report on Form SSA-455, on which RSDI recipients must confirm and/or supply information to establish their continued eligibility for benefits. The Form SSA-455 requires RSDI recipients to report, among other things, any changes in employment, health, and disability status.

7.      Statements in an application for RSDI benefits or as part of the CDR are made under penalty of perjury. The initial application form contains a warning to the effect that anyone making a false statement or representation of a material fact for use in determining the right to payment commits a crime. Similarly, the CDR Form SSA-455 contains a warning to the effect that anyone who knowingly gives a false or misleading statement about a material fact in a statement or redetermination statement, or causes someone else to do so, commits a crime.

8.      The United States Department of the Treasury, which is headquartered in Washington, D.C. makes payments to RSDI recipients on behalf of the SSA.

The Supplemental Nutrition Assistance Program

9.      The United States Department of Agriculture ("USDA"), an agency of the United States, through the USDA's Food and Nutrition Service, provides funding for the Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the federal Food Stamp Program, and shares the cost of administering the SNAP program with state partners. The SNAP program provides lower-income households with financial assistance to buy food. Eligibility for SNAP benefits is based on income, resources, and the number of individuals in a household.

10.      In Connecticut, the USDA provides funding for SNAP benefits and administration, while the Connecticut Department of Social Services ("CT-DSS") administers the program in accordance with federal requirements.

11.      SNAP beneficiaries receive their benefits through an Electronic Benefit Transfer ("EBT") card, which is provided once their eligibility is established. Each EBT card is credited with a dollar amount of benefits for each month. The EBT card can be used to directly purchase food from certain retailers.

12.      To obtain SNAP benefits in Connecticut, an applicant must complete an initial application and interview, through which they must disclose all income from work and other sources. Periodically thereafter, beneficiaries must complete a Form W-1ER to establish their continued eligibility for benefits, including disclosing any changes in their income. Statements made in an application for SNAP benefits or on Form W-1ER are made under penalty of perjury and contain warnings to the effect that anyone who knowingly gives a false or misleading statement about a material fact commits a crime.

13.      At all times relevant to this Indictment, the financial institution contracted in Connecticut for the SNAP EBT program was Conduent, Inc., which is headquartered in Florham

3

Park, New Jersey and used a data center located in Sandy, Utah to house individual cardholder transaction data and make daily settlement payments to retailers in Connecticut.

The Unemployment Insurance Program

14. The United States Department of Labor ("USDOL"), an agency of the United States, oversees the federal-state Unemployment Insurance ("UI") program. The UI program provides financial assistance to individuals who are out of work through no fault of their own. The funding for unemployment benefits comes from taxes paid by employers.

15. In Connecticut, the UI program is administered by the Connecticut Department of Labor ("CT-DOL") in partnership with the USDOL. Eligibility for UI benefits is determined based on an individual's self-reported employment history, current employment status, and availability for work.

16. To receive UI benefits in Connecticut, an individual must complete an initial application. To maintain benefits, beneficiaries must complete weekly certifications to confirm or update their employment status and availability for work. Statements made as part of the weekly certifications are made under penalty of perjury and contain warnings to the effect that anyone who knowingly gives a false or misleading statement about a material fact in a weekly certification statement commits a crime. An individual can elect to have their unemployment benefits directly deposited to a bank account or debit card.

17. In order to directly deposit unemployment benefits to a recipient's bank account or debit card, CT-DOL electronically transmits a payment file from servers in Connecticut to JP Morgan Chase, a financial institution whose servers are located outside of Connecticut. The payment file contains information about how much money should be deposited to a recipient's

bank account or debit card. Upon receiving the payment file, JP Morgan Chase initiates a direct deposit into the UI beneficiary's bank account or debit card.

<u>The Scheme and Artifice to Defraud</u>

18.    From on or about April 8, 2002 and continuing through on or about April 30, 2024, the exact dates being unknown to the Grand Jury, SANTIAGO devised and intended to devise a scheme and artifice to defraud and to obtain money and property from the SSA, USDOL, CT-DOL, USDA, and CT-DSS (collectively, the "Agencies") in the form of RSDI, UI, and SNAP benefits by means of materially false and fraudulent pretenses and representations, including by omissions of material facts. Specifically, SANTIAGO concealed or failed to accurately report his income and employment status to the Agencies, thereby obtaining RSDI, UI, and SNAP benefits to which he was not entitled.

19.    As part of the scheme and artifice, SANTIAGO held jobs with numerous employers, whose identities are known and unknown to the Grand Jury, between April 8, 2002, and April 30, 2024, earning income from these employers exceeding $500,000, but he provided false identification information and documents to his employers to conceal this employment income from the Agencies. For example:

a.    On multiple occasions, SANTIAGO obtained employment but reported to employers a Social Security Number belonging to another individual whose identity is known to the Grand Jury ("Individual 1").

b.    On at least one occasion, SANTIAGO provided a falsified Social Security Card to an employer as part of his application for employment, which card showed SANTIAGO's own name with the Social Security Number belonging to Individual 1.

c.      On at least one occasion, SANTIAGO submitted a valid Social Security Card belonging to Individual 1 to an employer as if it was his own.

20.    It was further part of the scheme and artifice that SANTIAGO provided materially false information and failed to disclose material information to the SSA to fraudulently obtain RSDI benefits:

a.      On or about April 8, 2002, SANTIAGO applied for RSDI. Based on his application, the SSA approved SANTIAGO for RSDI and determined that he first became disabled on March 28, 2002. The SSA determined that SANTIAGO was disabled for five consecutive calendar months, and he began receiving monthly RSDI benefits in or around September 2002. As part of his initial application for RSDI benefits, SANTIAGO agreed to inform the SSA of any change in his medical condition that would allow him to return to work, or if he actually did return to work, either as an employee or a self-employed person.

b.      On or about October 13, 2017, SANTIAGO completed Form SSA-455. On that form, he represented that his health condition had worsened over the past two years and that he had not been employed between October 2015 and October 2017. Based on SANTIAGO's representations on Form SSA-455, the SSA deferred SANTIAGO's CDR by automated review, and his RSDI benefits continued.

c.      From on or about April 8, 2002, through on or about April 30, 2024, SANTIAGO failed to disclose to the SSA his employment and income, as set forth above.

d.      As a result of these material misstatements and omissions, SANTIAGO received monthly RSDI payments for which he was not eligible from the SSA totaling more than $300,000. Since November 1, 2016, SANTIAGO received his monthly RSDI payments as direct

6

deposits from the United States Department of the Treasury into his Achieve Financial Credit Union account ending -7029.

21.    It was further part of the scheme and artifice that SANTIAGO provided materially false information and failed to disclose material information to the CT-DSS to fraudulently obtain SNAP benefits:

a.    On or about February 28, 2017, SANTIAGO submitted to the CT-DSS his application for SNAP benefits. As part of his application, SANTIAGO represented that he had no earned income from employment. As a result, the CT-DSS determined that he was eligible for benefits based on the representations on his application. He received an EBT card and began using it for purchases on or about March 5, 2017.

b.    To renew his SNAP benefits, SANTIAGO completed multiple Forms W-1ER on which he failed to report any income from employment, and he continued to receive SNAP benefits through on or about April 30, 2024.

c.    In truth and in fact, as SANTIAGO well knew, SANTIAGO was gainfully employed when he submitted his application for SNAP benefits on or about February 28, 2017, and he earned significant income from employment between on or about February 28, 2017 and on or about April 30, 2024. Had SANTIAGO accurately reported his income, he would not have been eligible to obtain and renew his SNAP benefits.

d.    As a result of these material misstatements and omissions, between on or about March 5, 2017 and on or about April 30, 2024, SANTIAGO obtained SNAP benefits for which he was not eligible totaling more than $17,000.

7

22.     It was further part of the scheme and artifice that SANTIAGO provided materially false information and failed to disclose material information to the CT-DOL to fraudulently obtain UI benefits:

a.     On or about April 1, 2020, SANTIAGO applied for UI benefits through the CT-DOL. On his application, SANTIAGO provided a false Social Security Number, which number was associated with Individual 1. Further, on the same application, SANTIAGO reported that he was unemployed but available for work and physically able to work. The CT-DOL determined that SANTIAGO was eligible for UI benefits, and he began receiving weekly payments on or about April 4, 2020.

b.     To continue receiving UI benefits, SANTIAGO completed weekly certifications. On each weekly certification, SANTIAGO again provided a false Social Security Number, which number was in fact associated with Individual 1. SANTIAGO further affirmed that he had not completed any work, including self-employment. Based on these weekly certifications, SANTIAGO continued to receive UI benefits until on or about February 1, 2021.

c.     In truth and in fact, as SANTIAGO well knew, SANTIAGO was gainfully employed when he submitted his application for UI benefits on or about April 1, 2020, and he earned significant income from employment between on or about April 1, 2020 and on or about February 1, 2021. Had SANTIAGO accurately reported his income, he would not have been eligible to obtain UI benefits during this period.

d.     As a result of these material misstatements and omissions, between on or about April 1, 2020 and on or about February 1, 2021, SANTIAGO received UI benefits for which he was not eligible totaling more than $30,000.

8

## Execution of the Scheme and Artifice

23.    On or about the dates listed below, in the District of Connecticut and elsewhere, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, including by omissions of material fact, as described above, SANTIAGO knowingly transmitted and caused to be transmitted, by means of wire communication in interstate commerce, the following writings, signs, signals, pictures, and sounds, each of which is a separate count of the Indictment:

| Count | Date | Benefit | Description |
|-------|------|---------|-------------|
| ONE | December 29, 2023 | RSDI | Direct deposit of $1,620.00 RSDI payment from the United States Department of the Treasury to SANTIAGO's Achieve Financial Credit Union account ending -7029. |
| TWO | March 1, 2024 | SNAP | Electronic transmission of EBT purchase of $26.84 at Walmart in Hartford, Connecticut to Conduent, Inc.'s servers in Utah. |
| THREE | February 1, 2021 | UI | Electronic transmission of payment file from CT-DOL to JP Morgan Chase containing information for payment of $848.00. |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

24.    Upon conviction of one or more of the wire fraud offenses alleged in Counts One through Three of this Indictment, the defendant RICARDO SANTIAGO, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1343, and a sum of money equal to the amount of proceeds obtained as a

9

result of the offense.

25.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1); Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

A TRUE BILL

/s/

FOREPERSON

UNITED STATES OF AMERICA

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

NATHAN J. GUEVREMONT
ASSISTANT UNITED STATES ATTORNEY

10